THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| BROOKE HANSEN,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>ATLANTIC COUNTY JUSTICE<br>FACILITY, et al.,<br><br>　　　　　　Defendants. | Civil No. 17-0466 (JBS/JS) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the "Motion to File Late Notice of Claim" [Doc. No. 3] filed by plaintiff Brooke Hansen. Plaintiff requests the Court to find that her Notice of Tort Claim served on defendant Atlantic County[1] on or about November 10, 2016 was timely filed pursuant to the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. 59:1-1, et seq. In the alternative, plaintiff requests the Court's leave to file a late Notice of Claim ("Notice") pursuant to N.J.S.A. 59:8-9 because "extraordinary circumstances" prevented her from timely filing her Notice. The Court received defendant's opposition [Doc. No. 14] and

---

[1] Defendants Atlantic County Justice Facility d/b/a The Gerald L. Gormley Justice Facility and Atlantic County Department of Public Safety played no role for the purpose of the present motion. Accordingly, "defendant" refers to defendant Atlantic County unless otherwise noted.

plaintiff's reply [Doc. No. 16]. The Court recently held oral argument. For the reasons to be discussed, plaintiff's motion is DENIED.

BACKGROUND

The present action arises out of injuries plaintiff sustained when she fell and struck her head while detained at the Atlantic County Justice Facility ("Facility"). Plaintiff argues she suffered physical and emotional harm due to defendant's deliberately indifferent and tortious conduct that allegedly caused her fall. Am. Compl. ¶¶ 1-2 [Doc. No. 7].

On January 28, 2016, plaintiff was arrested and taken into custody during a traffic stop by the New Jersey State Police due to a bench warrant issued out of Atlantic County. During the stop, plaintiff informed the arresting officers that she was under the influence of alcohol and drugs (heroin and Xanax). Id. ¶¶ 17-22. Upon arriving at the Facility, plaintiff informed the Facility personnel that she was intoxicated and under the influence of drugs. Id. ¶ 24. Due to concerns about possible withdrawal symptoms raised after medical and mental health evaluations, the Facility personnel assigned plaintiff a "special needs" status. Def.'s Exs. B-D [Doc. Nos. 14-2]. Plaintiff's "special needs" status called for a "lower level, lower bunk" medical housing between January 28 and February 12, 2016. Def.'s Ex. D.

Prior to being admitted to the Facility's general population, plaintiff was placed in a holding cell in the admissions area. Shortly thereafter, plaintiff lost consciousness due to the effects of alcohol and drugs, resulting in her fall in the holding cell. As a consequence of her fall, plaintiff suffered "significant visible injuries to [her] face and head." The Facility's medical staff determined that plaintiff's injuries required further treatment and transported her to Shore Medical Center ("Shore Medical"). Am. Compl. ¶¶ 30-33; see also Def.'s Ex. E.

Plaintiff arrived at Shore Medical at approximately 5:30 p.m. on January 28, 2016 and was diagnosed with a "closed head injury" and "neck sprain/strain." A computerized tomography ("CT") scan of plaintiff's brain performed on the same day also revealed a "2.3 x 1.3 cm mass" on the right side of her brain. Shore Medical recommended further evaluation or magnetic resonance imaging ("MRI") of the mass due to the possibility that it "may be related to a meningioma." Am. Compl. ¶¶ 34-35; Am. Compl. Ex. A [Doc. No. 7-1]. Plaintiff was discharged from Shore Medical later that evening and was transported back to the Facility. On February 11, 2016, plaintiff was transported to Shore Medical for a follow-up MRI as recommended. The MRI revealed a "large flow void arising from the right internal carotid artery measuring 2 cm in greatest dimension, most consistent with giant aneurysm." Am. Compl. ¶¶ 36-37; Am. Compl. Ex. B [Doc. No. 7-2].

Plaintiff remained incarcerated at the Facility until April 30, 2016 or for a total of ninety-three (93) days. Am. Compl. ¶¶ 38-39. Throughout her incarceration, plaintiff made a number of telephone calls to her mother and her boyfriend "John" regarding her circumstances.[2] See Def.'s Exs. H2-H6 [Doc. Nos. 14-4 to 14-8]. In particular, plaintiff spoke with John on numerous occasions to discuss: (1) plaintiff's January 28, 2016 fall at the Facility (Def.'s Ex. H6 Phone Tr. 6:19-7:14); (2) the diagnosis and treatment plaintiff received at Shore Medical (id.); (3) plaintiff's need for surgery due to her aneurysm (Def.'s Ex. H5 Phone Tr. 153:7-155:10); (4) the actions allegedly taken by John and plaintiff's mother to obtain plaintiff's medical records for "Mr. Batt"[3] (id. 155:15-156:14); (5) Mr. Batt's alleged statements

---

[2] The Court notes that plaintiff's transcripts are replete with conversations which demonstrate plaintiff's awareness of her situation and her ability to look after her own affairs. The Court will not recite each and every conversation but incorporates herein by reference defendant's summary of the transcripts in its opposition. See Def.'s Opp'n Statement of Facts ¶¶ 18-47. Furthermore, defense counsel represented that the transcripts are complete and plaintiff's counsel did not raise any objections to the Court's reliance on the evidence. Aug. 11, 2017 Oral Argument Transcript ("OA Tr.") 7:8-22.

[3] "Mr. Batt" refers to Gerald Batt, Esquire who represented plaintiff in her criminal matters. It is not entirely clear what role, if any, counsel played in the present matter. According to plaintiff, she was under the false impression that Mr. Batt was representing her in pursuing a personal injury claim due to John's alleged misrepresentations. Pl.'s Reply at 4 [Doc. No. 16]. However, according to Mr. Batt's March 16, 2017 e-mail, counsel did not represent plaintiff in any civil matter and he did not recall ever discussing the matter with plaintiff or anyone on her behalf. Pl.'s Ex. D [Doc. No. 16-4]. It is true that plaintiff

to John that he would be able to represent plaintiff once counsel

has her medical records (Def.'s Ex. H4 Phone Tr. 87:18-88:20); (6)

plaintiff's letter to her public defender regarding her criminal

matter (Def.'s Ex. H3 Phone Tr. 12:1-25); and (7) plaintiff's

attempt to communicate with Mr. Batt by passing a letter to another

inmate to be delivered to Mr. Batt (Def.'s Ex. H2 Phone Tr. 65:5-

66:5).[4] It is the Facility's policy to record all telephone

conversations made by inmates and they are informed of this policy

during each and every telephone conversation. Def.'s Opp'n at 6

[Doc. No. 14]; see also Def.'s Ex. G ¶ 4(d) [Doc. No. 14-3].

---

attempted to communicate in writing with Mr. Batt without success
during her incarceration. See Pl.'s Reply at 8-9. However,
plaintiff's phone transcripts plainly indicate she was trying to
find out why Mr. Batt was not representing her. Id. at 5 (citing
Def.'s Exs. H6 Phone Tr. 49:11-15, 104:18-22, H5 Phone Tr. 25:11-
14, 46:8-9, 112:22). Plaintiff's own words belie her claim that
she thought Mr. Batt was representing her.

[4] This evidence contradicts plaintiff's allegation in her
amended complaint that "throughout the duration of her
incarceration, Ms. Hansen communicated with counsel, who she
believed was representing her as to her fall." See Am. Compl. ¶
45. At oral argument plaintiff's counsel clarified plaintiff's
position as:

> [Plaintiff] thought she was being adequately represented
> by counsel, but in fact she wasn't and she had no way of
> knowing that because -- or she may have had way of
> knowing that but she didn't -- people were telling her
> that oh yeah, this attorney is going to do this for you,
> he's got it, don't worry about it, he's taking care of
> your issues.

OA Tr. 12:23-13:5. The Court construes plaintiff's argument on
this point as claiming that plaintiff was "lulled" into inaction
by third parties' reassurances that others were acting on her
behalf.

According to plaintiff, she did not discover the full extent of her injuries and the causal connection between her symptoms and the January 28 fall until November 2, 2016.[5] On that date, she visited the Emergency Department of Kennedy University Hospital ("Kennedy") complaining of "severe pains in her head and abnormal swelling and blurry vision in her right eye." Kennedy performed an additional CT scan and MRI of plaintiff's brain which revealed that plaintiff's brain aneurysm was increasing in size and required emergency surgery to remove the aneurysm. Am. Compl. ¶¶ 50-54; Am. Compl. Ex. C [Doc. No. 7-3]. Plaintiff immediately retained her present counsel following the November 2 visit to Kennedy and counsel served plaintiff's Notice on all necessary public entities on November 10, 2016 pursuant to the NJTCA. Am. Compl. ¶ 55; Am. Compl. Ex. D [Doc. No. 7-4]. On or about November 15, 2016, defendant responded by disputing that plaintiff's November 10 Notice was timely. See Def.'s Ex. F [Doc. No. 7-3]. Plaintiff subsequently underwent her first emergency surgery to remove the aneurysm on November 21, 2016; however, it was aborted due to

---

[5] Although not determinative to plaintiff's motion, the Court notes and plaintiff has conceded that aside from plaintiff's bald assertions, there is no support in the record for plaintiff's contention that on November 2, 2016, a doctor told her that her aneurysm was causally related to the fall. OA Tr. 9:16-19; Pl.'s Br. at 1 [Doc. No. 3-2]. In fact, plaintiff's counsel conceded "there's no dispute that [plaintiff] knew she was injured when she fell and hit her head." OA Tr. 14:16-17.

complications. Plaintiff ultimately had her aneurysm removed on December 14, 2016. Am. Compl. ¶¶ 56-58.

Plaintiff filed the instant action on January 23, 2017 [Doc. No. 1] and amended her complaint on January 27, 2017. [Doc. No. 7]. Plaintiff asserts the following claims: (1) substantive due process civil rights violation under 28 U.S.C. § 1983 and New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-1, et seq.; (2) negligence; (3) negligent supervision; and (4) dangerous conditions of public property pursuant to N.J.S.A. 59:4-2. See generally Am. Compl.

Plaintiff filed the present motion on January 25, 2017, requesting the Court to find her November 10, 2016 Notice was timely filed under the "discovery rule." Plaintiff relies on N.J.S.A. 59:8-8 to argue her claims did not accrue until November 2, 2016 when she allegedly discovered the full extent of her injuries and the causal connection between her symptoms and the January 28, 2016 fall. In the alternative, plaintiff requests the Court to grant her leave to file a late Notice under N.J.S.A. 59:8-9 and asserts that "extraordinary circumstances" exist to warrant such relief. Pl.'s Br. at 9-12. In support, plaintiff directs the Court's attention to her incarceration during the entire 90-day filing period, her medical and mental condition allegedly due to her withdrawal/detox from drug use, the "debilitating effects of her head injury and aneurysm," and her inability to obtain new

counsel and legal advice. According to plaintiff, these circumstances are "extraordinary" when considered together and, thus, the Court's leave to file late Notice of Claims is warranted. Pl.'s Reply at 7-9. Plaintiff further argues defendant fails to demonstrate substantial prejudice should the Court find that "extraordinary circumstances" prohibited plaintiff from timely filing her Notice. Id. at 9.

In opposition, defendant argues plaintiff's claims accrued on or about January 28, 2016 when she fell at the Facility and was treated at Shore Medical.[6] The crux of defendant's argument is that the discovery rule is inapplicable to plaintiff's claims because plaintiff was fully aware of the fall, her injuries, the need for surgery and the "identity of the target of a lawsuit" as early as January 2016. See Def.'s Opp'n at 6.

Defendant further argues plaintiff's claim of "extraordinary circumstances" is baseless because there is nothing extraordinary

---

[6] The Court notes that defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) is pending before the Honorable Jerome B. Simandle, U.S.D.J. In its motion to dismiss as to plaintiff's tort claims, defendant incorporates its argument and law set forth in its opposition to plaintiff's present motion. Def.'s Mot. at 2, 13 [Doc. No. 17]. As noted, plaintiff asserts tort claims and civil rights violations under state and federal law. Plaintiff's civil rights claims are not subject to the notice requirement of the NJTCA. See Cty. Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 174 (3d Cir. 2006) ("It is true that the NJTCA's notice requirements do not apply to federal claims, including § 1983 actions or to state constitutional torts." (internal citations omitted)). Accordingly, the Court's decision in the present matter is not case-dispositive.

about plaintiff's situation. Id. at 17-18. In particular, defendant argues that nothing about plaintiff's incarceration prevented her from timely filing her Notice because the Facility was "ready, willing and able to assist plaintiff" in filing the Notice. Id. at 18. Defendant further argues that nothing about plaintiff's physical or emotional condition prevented her from timely filing her Notice because plaintiff was "able to ambulate, converse, read and write, and communicate with her family and friends." Id. at 19. As to plaintiff's argument that she was unable to obtain new counsel, defendant argues an "attorney's inattentiveness or even malpractice, does not equate to extraordinary circumstances." Id. at 20. In support, defendant mainly relies on plaintiff's telephone conversations with her family and friends during her incarceration. In its brief defendant argued it is substantially prejudiced by plaintiff's failure to timely file her Notice. Defendant withdrew this position during oral argument. OA Tr. 25:13-18.

As will be discussed, plaintiff's motion is denied. The Court declines to apply the discovery rule to plaintiff's claims, finding that her tort claims accrued on the date of her fall at the Facility, January 28, 2016. Accordingly, the Court concludes plaintiff's November 10, 2016 Notice was not timely filed within the 90-day window pursuant to the NJTCA. The Court further finds

plaintiff fails to demonstrate "extraordinary circumstances" to justify a late Notice of Claim pursuant to N.J.S.A. 59:8-9.

DISCUSSION

Under the NJTCA, "[n]o action shall be brought against a public entity or public employees . . . unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J.S.A. 59:8-3. The purpose of the NJTCA is to "reestablish the immunity of public entities while coherently ameliorating the harsh results of the doctrine." Elazar v. Macrietta Cleaners, Inc., C.A. No. 078079, 2017 WL 3161116, at *6 (N.J. July 26, 2017) (quoting Beauchamp v. Amedio, 751 A.2d 1047, 1049 (N.J. 2000)); see also Jones v. Morey's Pier, Inc., C.A. No. 077502, 2017 WL 3184454, at *6 (N.J. July 27, 2017) (noting that the NJTCA provides a "broad but not absolute immunity for all public entities" and is intended "to bring uniformity to the laws in this State with respect to sovereign immunity to tort claims enjoyed by public entities" (citations omitted)).

The NJTCA requires a claimant to file a Notice of Claim within ninety (90) days of the accrual of the claim as a "prerequisite to proceeding with a tort claim against a public entity." Elazar, 2017 WL 3161116, at *6. A failure to comply with the 90-day filing requirement generally results in the claimant being "forever barred from recovering against [the] public entity." N.J.S.A. 59:8-8. However, the statute provides courts with limited

discretion to allow the late filing of a Notice of Claim. "Under extraordinary circumstances, and accompanied by a showing that the public entity has not been substantially prejudiced, a plaintiff may file a late notice of claim within one year of the accrual of the claim." Elazar, 2017 WL 3161116, at *6 (citing N.J.S.A. 59:8-9); see also Tripo v. Robert Wood Johnson Med. Ctr., 845 F. Supp. 2d 621, 627 (D.N.J. 2012).

In deciding plaintiff's motion, the Court must engage in a "sequential analysis" to determine whether plaintiff's Notice was timely. Beauchamp, 751 A.2d at 1051. To do so, the Court must first determine the date on which plaintiff's tort claims accrued. Elazar, 2017 WL 3161116, at *6 (citations omitted). The New Jersey Supreme Court explained:

> The first task is always to determine when the claim accrued. The discovery rule is part and parcel of such an inquiry because it can toll the date of accrual. Once the date of accrual is ascertained, the next task is to determine whether a notice of claim was filed within ninety days. If not, the third task is to decide whether extraordinary circumstances exist justifying a late notice. Although occasionally the facts of a case may cut across those issues, they are entirely distinct.

McDade v. Siazon, 32 A.3d 1122, 1129 (N.J. 2011) (quoting Beauchamp, 751 A.2d at 1051). Accordingly, the Court will begin its analysis by determining the accrual date of plaintiff's tort claims.

A. <u>Accrual Date and Discovery Rule</u>[7]

The Court finds the discovery rule is inapplicable to plaintiff's tort claims and, thus, plaintiff's claims accrued on January 28, 2016. Therefore, plaintiff's Notice of Tort Claims served on November 10, 2016 was untimely pursuant to N.J.S.A. 59:8-8.

The NJTCA "does not define the date of accrual in any significant way"; however, the comments to section 59:8-1 provide, "[i]t is intended that the term accrual of cause of action shall be defined in accordance with existing law in the private sector." <u>Elazar</u>, 2017 WL 3161116, at *6 (quoting <u>Beauchamp</u>, 751 A.2d at 1050). The existing case law generally holds that a "claim accrues on the date on which the underlying tortious act occurred." <u>Id.</u> at *7 (citing <u>Beauchamp</u>, 751 A.2d at 1050). Nonetheless, in limited situations where the claimant is unaware of his injury or unaware that a third party is responsible for a known injury, courts in New Jersey have applied the discovery rule to toll the accrual

_____

[7] Plaintiff fails to present any legal argument as to the accrual date of her claims or applicability of the discovery rule in her papers. <u>See</u> Pl.'s Br. at 9-12; <u>see</u> <u>also</u> Pl.'s Reply at 7-12. Plaintiff merely states that she did not fully appreciate the severity of her injury and its causal relationship with her fall until November 2, 2016. As noted, the record does not support plaintiff's assertion on this point. <u>See</u> <u>supra</u> n.5. It appears the crux of plaintiff's argument is related to the "extraordinary circumstances" which allegedly prevented her from timely filing her Notice. Nonetheless, the Court will engage in a "sequential analysis" to determine in the first instance the accrual date of plaintiff's tort claims.

date. Id. (citation omitted). Stated differently, "[b]y operation of the discovery rule, the accrual date is tolled from the date of the tortious act or injury when the injured party either does not know of his injury or does not know that a third party is responsible for the injury." Id. (citing McDade, 32 A.3d at 1129); see also Tripo, 845 F. Supp. 2d at 628 ("By its own terms, [the discovery rule] applies only where the injured party has no reason to know of the existence of a claim." (citing Lopez v. Swyer, 300 A.2d 563, 566 (N.J. 1973))). The same principle applies under the NJTCA. The application of the discovery rule to the notice requirement tolls the accrual date and "the ninety-day period within which the injured party must file a notice of claim against a public entity is likewise delayed until the injured party learns of the injury or of the third party's responsibility for the injury." Elazar, 2017 WL 3161116, at *7 (first citing McDade, 32 A.3d at 1129; and then citing Beauchamp, 751 A.2d at 1153). In striking a balance between the immunity of public entities and the harsh results of the doctrine, the NJTCA "allows only a short period for service of a notice of claim on the responsible public entity" once the accrual date is determined. Id. (citing McDade, 32 A.3d at 1129).

In the present matter, plaintiff requests the Court to find her tort claims accrued on November 2, 2016 when she allegedly came to "fully appreciate the severity of her conditions [and]

that the symptoms she was experiencing were casually [sic] related to her injuries from the fall." Plaintiff further argues she first learned her aneurysm required brain surgery on November 2, 2016. Pl.'s Br. at 7. In opposition, defendant argues that plaintiff was fully aware of "her accident, her injuries, the necessity of surgery, and of the target of a lawsuit" in January or February 2016. See Def.'s Opp'n at 6.

The Court agrees with defendant. This is so because it cannot be contested that plaintiff knew of her injury on January 28, 2016 since she arrived at Shore Medical "awake and "verbally responsive." Am. Compl. Ex. A [Doc. No. 7-1]. In fact, the "Emergency Department Note-Physician" ("ER Note") attached to plaintiff's amended complaint indicates that plaintiff was able to provide her medical history and the description of her fall to the examining physician. Id. In particular, the ER Note indicates: "Additional history: pt. from jail, was in intake after arrested . . . while at intake, pt. fell from standing position and hit head . . . pt. not sure if blacked out, pt. arrived awake, verbally responsive at exam, requesting not to get narcan, pt. moving all 4 ext. in no acute distress." Id. Plaintiff is mistaken in her belief that the discovery rule tolls the accrual date under the NJTCA until a claimant becomes fully aware of the extent of her injuries. See Beauchamp, 751 A.2d at 1053 ("Although the full extent of an injury or loss may not be known, the notice is

triggered by the occurrence of injury and must be filed in order for a complaint to be lodged against the public entity."). The record is clear, and plaintiff concedes, that she was aware of her head injury due to the January 28, 2016 fall as evidenced by the information plaintiff was able to provide to the examining physician on the same date.

Likewise, plaintiff was aware that a third party may be responsible for her injury on the date of the incident because plaintiff was able to provide the location of her fall—intake area of the Facility—to the examining physician at Shore Medical. See Am. Compl. Ex. A. Even assuming this is not the case, the transcript of plaintiff's phone calls shows she was aware that a third party may be responsible for her injury by February 16, 2016 at the latest when she spoke with her boyfriend John:

> A.   Nothing, he just said that it's pretty serious and he's going to keep his eye on me and see me every week.
> Q.   Brooke, listen, that's important.
> A.   I know this is important, and my mom is getting my medical information. So you got to get Mr. Batt to get this -- maybe get a lawsuit going because.
> Q.   Listen. Listen, and it's from the fall?
> A.   Well, that's where he's -- he's not sure if it's from the fall or if it's from -- if it happened at birth or it's from anything --

Def.'s Ex. H6 Phone Tr. 132:25-133:11. Plaintiff's transcript also evidences she clearly related her injuries to her fall when she told John on February 16, 2016: "Like you're going to have me do all this and instead of getting Mr. Batt to help get a lawsuit

going. . . . Because you know this is all because of the fall."
Id. 134:4-10. The fact that early on plaintiff associated her
injuries with her January 28, 2016 fall is further evidenced by
plaintiff's February 17, 2016 conversation when she told John:
"[I]t would be nice to -- it would be nice to have . . . . A
lawsuit for neglecting me for six days after I -- banged my head.
. . . Hopefully I can get my f**kin lawsuit that I've been wanting
all my life." Def.'s Ex. H5 Phone Tr. 14:19-15:5.

Therefore, since plaintiff was aware her head injury was due
to her fall as early as January 28, 2016, and no later than February
16, 2016, the discovery rule is of no assistance to plaintiff.
Accordingly, the Court finds that plaintiff's tort claims accrued
on January 28, 2016 and that her November 10, 2016 Notice served
on defendant was untimely pursuant to N.J.S.A. 59:8-8. The Court
will now discuss whether plaintiff has sufficiently demonstrated
"extraordinary circumstances" to justify allowing her to file a
late Notice of Claim pursuant to N.J.S.A. 59:8-9.

B.    Late Notice of Claim Under N.J.S.A. 59:8-9

The thrust of plaintiff's motion is if the Court finds her
tort claims accrued on the date of her fall at the Facility, she
should be permitted to file a late Notice of Claim pursuant to
N.J.S.A. 59:8-9. According to plaintiff, her medical and emotional
condition while incarcerated and being under the wrong impression
about    attorney    representation    constitute    extraordinary

circumstances. Plaintiff further argues that defendant failed to show it will be substantially prejudiced by a late Notice. As noted, defendant argues there is nothing extraordinary about plaintiff's circumstances. The Court agrees with defendant there is nothing extraordinary to sufficiently explain plaintiff's failure to timely comply with N.J.S.A. 59:8-8. Ignorance of the ninety-day deadline does not excuse late filing. D.D. v. Univ. of Med. & Dentistry of N.J., 61 A.3d 906, 921 (N.J. 2013) (citation omitted).

As noted, pursuant to N.J.S.A. 59:8-9, the Court may exercise its discretion to allow plaintiff to file a late Notice within one year of the accrual date if: (1) plaintiff can demonstrate extraordinary circumstances sufficiently explaining her failure to timely file her Notice and (2) defendant has not been substantially prejudiced by the late Notice. The NJTCA does not define "extraordinary circumstances"[8] and the issue of whether a claimant has demonstrated extraordinary circumstances must be determined on a case-by-case basis. Tripo, 845 F. Supp. 2d at 631 (citation

---

[8] The New Jersey Legislature amended the NJTCA in 1994 to add the "extraordinary circumstances" language to section 59:8-9. The Supreme Court of New Jersey recognized that the intent behind the amendment was to raise the bar for filing a late Notice of Claim by replacing a "fairly permissive standard" with a "more demanding one." D.D., 61 A.3d at 916-17 ("Courts faced with applications for leave to file a late notice of claim, therefore, must proceed with their evaluation mindful of the Legislature's direction that the proofs demonstrate circumstances that are not merely sufficient, but that they instead be extraordinary.").

omitted). Further, in determining whether extraordinary circumstances exist, the Court must focus on "evidence that relates to plaintiff's circumstances as they were during the ninety-day period, because that is the time during which the notice should have been filed." D.D., 61 A.3d at 918. Nonetheless, several guideposts can be gleaned from New Jersey case law discussing extraordinary circumstances under the NJTCA.

1. Medical or Emotional Conditions

In order for medical or emotional conditions to be extraordinary, they must be "severe or debilitating." In other words, the inquiry is whether the "severity of the medical condition and the consequential impact on the claimant's very ability to pursue redress and attend to the filing of a claim." Id. at 917-18 (citations omitted). Here, plaintiff asserts her medical and emotional condition, including the alleged "debilitating effects of her head injury and aneurysm" and withdrawal/detox from her drug use, constitute extraordinary circumstances. Plaintiff also argues during her incarceration she "was not of sound mind, suffered from brain damage, depression[] and anxiety." Pl.'s Br. at 1.

While the Court does not minimize the potential impact of plaintiff's brain aneurysm and the consequences of drug addiction, the record does not support plaintiff's contention that her medical or emotional condition were sufficiently "severe or debilitating"

to prevent her from attending to her affairs, including filing her Notice of Claim. In fact, the opposite is true. Plaintiff's conversations and actions demonstrate that at all relevant times she was cogent, alert and attentive to her circumstances. Plaintiff was also unquestionably aware of her fall and the fact she was injured from the fall. Indeed, as discussed infra, during her incarceration plaintiff even discussed the possibility of a civil lawsuit arising from her fall. And, she also discussed the details of her fall.

Plaintiff's phone conversations plainly belie her claim that while in jail she was incapacitated. For instance, plaintiff's medical or emotional condition did not prevent plaintiff from "repeatedly questioning whether Mr. Batt in fact represented her, why nothing was being done, and that John appears to be misrepresenting his communications with Mr. Batt." Pl.'s Reply at 5 (relying on defendant's Exhibit H6 attached to its opposition to plaintiff's motion). Nor did plaintiff's medical or emotional condition prevent her from seeking redress and attend to her criminal matter by writing a letter to the public defender requesting information in March 2016. See Def.'s Ex. H3 Phone Tr. 12:1-10. Accordingly, the Court finds that plaintiff's medical or mental condition during the 90-day filing period does not constitute "extraordinary circumstances" pursuant to N.J.S.A. 59:8-9.

2. <u>Incarceration</u>

Nor is plaintiff's incarceration during the 90-day filing period extraordinary. Plaintiff argues while ignorance of the law and attorney negligence may be an insufficient basis to permit the filing of a late Notice, "an attorney's negligence . . . combined with the victim's deprivation of liberty or physical incapacity, both of which exist here" support the finding of extraordinary circumstances. Pl.'s Br. at 12 (citing <u>Bayer v. Twp. Of Union</u>, 997 A.2d 1118, 1130 (N.J. Super. Ct. App. Div. 2010)). Plaintiff's reliance on <u>Bayer</u> is misplaced because she fails to consider the full context of the decision. In <u>Bayer</u>, the Appellate Division affirmed the lower court's denial of a motion to file a late claim. The court reasoned that the claimant arrestee's desire to obtain dismissal of his criminal charges before filing his Notice so not to aggravate law enforcement officials did not constitute extraordinary circumstances. The court merely left open the possibility of an extraordinary circumstance finding based on the same facts where the claimant is "incarcerated, disabled, or otherwise physically incapable of protecting his rights during the 90-day filing period." <u>Bayer</u>, 993 A.2d at 1130-31. However, that determination is to be done on a case-by-case basis and <u>Bayer</u> does not stand for the proposition that incarceration is extraordinary <u>per se</u>.

Plaintiff's incarceration during the 90-day window is not determinative here. The Court's focus is on plaintiff's specific circumstances, including her incarceration, that she experienced during the filing period. See Tripo, 845 F. Supp. 2d at 631; see also D.D., 61 A.3d at 918. There is no support for plaintiff's innuendo that an incarcerated inmate is excused from filing a Notice of her injury. Further, this is not a situation where plaintiff was physically incapable of looking after her own affairs during her incarceration. For instance, plaintiff was able to discuss her injury and prognosis with her family and friends, even strategizing about a possible civil suit arising from her injury. See Def.'s Ex. H6 Phone Tr. 133:4-133:11 ("I know this is important, and my mom is getting my medical information. So you got to get Mr. Batt to get this -- maybe get a lawsuit going . . . ."). Likewise, plaintiff was able to discuss the events leading up to her January 28, 2016 arrest only five days after the fall. Id. 13:9-11 ("I was with Wil and Kurt. I went right to Camden, got some f**king dope, shot it on the way home, got pulled over, got arrested. Simple as that."). During the same conversation, plaintiff was also able to describe the circumstances surrounding her fall. Id. 6:19-25 ("Listen to what happened to me. When I came in, I was real f**ked up and I smacked my head really hard and I got knocked out unconscious and they had to rush me to the hospital . . . ."). Plaintiff was even able to assist another inmate during

a phone conversation with John. Id. 44:9-45:18 ("She said thank you. All you got to do is just tell her to please put money on the phone for her daughter, okay?"). Therefore, the evidence does not support plaintiff's claim that her incarceration prevented her from complying with N.J.S.A. 59:8-9. Plaintiff's phone calls evidence that she was alert, cogent and attentive during the 93 days she was incarcerated. Accordingly, the Court finds that plaintiff's incarceration during the 90-day filing period does not constitute "extraordinary circumstances" pursuant to N.J.S.A. 59:8-9.

### 3. Inability to Retain Counsel

Plaintiff argues that her misunderstanding as to Mr. Batt's role in pursuing a civil claim further supports a finding of extraordinary circumstances. In support, plaintiff appears to be making two alternative arguments. In her opening brief, plaintiff claimed attorney negligence in that Mr. Batt failed to respond to her attempts to communicate with counsel. Pl.'s Br. at 6. In her reply, plaintiff attempts to place blame on third parties, i.e., her mother and John, for her mistaken belief that they were "taking actions on her behalf." Pl.'s Reply at 8-9. Plaintiff's counsel clarified plaintiff's position on this issue at oral argument, arguing that plaintiff was lulled into inaction due to reassurances by third parties. See supra n.4. As noted, defendant asserts

attorney negligence or even malpractice does not constitute extraordinary circumstances. Def.'s Opp'n at 20.

Plaintiff's attorney's alleged negligence as an excuse is rejected out of hand. This is so because it is well-settled that attorney negligence, inattentiveness or even malpractice is not sufficiently "extraordinary" to excuse a claimant's failure to comply with N.J.S.A. 59:8-9. D.D., 61 A.3d at 922; Rogers v. Cape May Cty. Office of Pub. Def., 31 A.3d 934, 942 (2011) ("[A] plaintiff's ignorance of the ninety-day deadline or counsel's inattention or administrative shortcoming do not constitute extraordinary circumstances."); Zois v. New Jersey Sports & Exposition Auth., 670 A.2d 92, 94 (N.J. Super. Ct. App. Div. 1996) (declining to find extraordinary circumstances where the plaintiff's attorney failed to timely file a Notice because of the attorney's forgetfulness and misfiling by the attorney's secretary).

To the extent plaintiff argues she was lulled into inaction due to her mistaken belief that others were acting on her behalf, the record contradicts plaintiff's argument. Plaintiff's own words demonstrate that she was "repeatedly questioning whether Mr. Batt in fact represented her, why nothing was being done, and that John appears to be misrepresenting his communications with Mr. Batt." Pl.'s Reply at 5. Even if plaintiff was in fact under the wrong impression of Mr. Batt representing her or others acting on her

behalf, it would not be a situation where defendant actively misled or lulled plaintiff into inaction. See McDade, 32 A.3d at 1132 (rejecting the plaintiff's equitable estoppel or tolling argument and noting that in "rare cases, courts have invoked equitable estoppel to relax the requirements of the Tort Claims Act when the defendant has misled the plaintiff about a material issue."); see also Hedges v. United States, 404 F.3d 744, 751 (3d Cir. 2005) (declining to equitably toll the statute of limitations in an action under the Suits in Admiralty Act, 46 U.S.C. §§ 741, et seq., because there was no evidence that the defendant "attempted to prevent or discourage [the plaintiff] from obtaining legal counsel by making "affirmative misrepresentations").

Plaintiff's inability to retain counsel or obtain sound legal advice allegedly due to third parties does not constitute extraordinary circumstances. See Zois, 670 A.2d at 94. To be sure, this is not a case where an attorney was retained and due to the attorney's fatal illness and related incapacity, the claimant's notice was not timely filed. See Beyer v. Sea Bright Borough, 114 A.3d 380, 382-83 (N.J. Super. Ct. App. Div. 2015). Nor is this a case where an attorney was reasonably confused over the state of the law regarding the NJTCA's notice requirement. See Beauchamp, 751 A.2d at 1053 ("Because [the plaintiff] relied on legal advice that was derived from the confusion surrounding this issue, we think she deserves to be granted relief from the ninety day filing

requirement of the [NJTCA].") Accordingly, the Court declines to find extraordinary circumstances in plaintiff's alleged mistaken belief that an attorney was representing her. In fact, plaintiff's own words demonstrate she knew an attorney did not represent her. Having found that none of the "circumstances" presented by plaintiff are "extraordinary," the Court will consider the "totality" of plaintiff's circumstances to determine if they are extraordinary.

4.  Totality of Circumstances

In determining whether extraordinary circumstances exist the Court must "consider the collective impact of the circumstances offered as reasons for the delay." R.L. v. State-Operated Sch. Dist., 903 A.2d 1110, 1116 (N.J. Super. Ct. App. Div. 2006) (citations omitted). This is so because the NJTCA does not define what constitutes "extraordinary circumstances" leaving that to be determined by courts on a case-by-by basis. See D.D., 61 A.3d at 916. Even considering plaintiff's asserted reasons for her delay in totality, the Court does not find that her circumstances during the 90-day filing period were extraordinary to justify a late filing of Notice. In doing so, the Court is mindful of the legislative intent behind the NJTCA and the 1994 amendment to add "extraordinary circumstances" language, i.e., that the waiver of sovereign immunity in enacting the NJTCA is limited. Id. at 916-17.

The crux of plaintiff's argument boils down to: "Ms. Hansen's physical condition, combined with her incarceration, actually restricted her ability to obtain counsel and sound legal advice for the entire duration of the 90-day Tort Claims Act window."[9] Pl.'s Reply at 9. This assertion is contradicted by plaintiff's own words. The Court agrees with defendant that nothing about plaintiff's physical and emotional condition—including her injury, drug/alcohol use and incarceration—prevented her from looking after her own affairs. For instance, in a phone conversation with John on March 31, 2017, plaintiff states that she wrote a letter to the public defender:

> A.    Because I was trying to hold off to see if you got an answer from the public defender, but you didn't.

---

[9] To the extent plaintiff relies on Tola v. State, C.A. No. A-3571-05T2, 2006 WL 3025617, at *1 (N.J. Super. Ct. App. Div. Oct. 26, 2006), the reliance is misplaced. See Pl.'s Br. at 11. In Tola, the plaintiff was granted leave to file a late Notice of Claims based on allegations of extraordinary circumstances supported by the plaintiff's affidavit. In particular, it was undisputed the plaintiff suffered serious incapacitating injuries, was bedridden for four weeks, and then confined to a wheelchair and then a walker to get around. Id. at *3. Plaintiff further certified that due to his physical condition causing him substantial pain, he was limited to "doing only the bare necessities of attending to medical appointments to address his injuries." Id. The Appellate Division affirmed, finding that "[g]iven the severity of plaintiff's injuries and the short period of time [nineteen days] that elapsed between expiration of the ninety-day period . . . and plaintiff's notice," it was unable to find reversible error. Id. In the present matter the record is replete with evidence of plaintiff's ability to look after her own affairs beyond "the bare necessities of attending" to her medical needs. Accordingly, the Court finds that plaintiff's reliance on Tola is inapposite.

B.    They won't give me no information. They said
they'll have him call me back.
A.    Really?
Q.    Yeah, and I said f**king they -- they ain't going
to give me no information, Brooke.
A.    All right. Well, I wrote a letter to them. So I'll
get the answer back.

Def.'s Ex. H3 Phone Tr. 12:1-10. In light of the evidence that
plaintiff was able to diligently and cogently communicate with the
public defender and others during her incarceration, while
allegedly suffering the "debilitating effects of her head injury
and aneurysm," the Court declines to find plaintiff's
incarceration and her physical/emotional condition to be
extraordinary.

Likewise, plaintiff's proffered reason of ineffective counsel
or lack of access to counsel during the 90-day period is not
determinative. This is so because it is clear nothing prevented
plaintiff from communicating with her public defender and others
during the 90-day filing period. Since plaintiff was contemplating
the filing of a civil lawsuit, and she was physically and mentally
able to take care of her affairs, nothing prevented plaintiff from
seeking the assistance of an attorney to represent her.
Accordingly, the Court finds that plaintiff's proffered reasons of
her "physical condition, combined with her incarceration, actually
restrict[ing] her ability to obtain counsel and sound legal
advice," considered in totality, do not constitute extraordinary
circumstances. Having found that plaintiff's proffered reasons for

her delay do not constitute extraordinary circumstances, the Court need not discuss whether defendant is substantially prejudiced by plaintiff's late notice.[10] In any event, defendant's prejudice argument is moot.

CONCLUSION

In sum, plaintiff has failed to demonstrate that the discovery rule is applicable to her tort claims under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1, et seq. Plaintiff has also failed to demonstrate that her 93-day incarceration, her physical and emotional condition, and the lack of access to counsel constitute extraordinary circumstances under N.J.S.A. 59:8-9 when considered individually or in totality.

**O R D E R**

Accordingly, for the foregoing reasons,

IT IS HEREBY ORDERED this 18th day of August 2017, that plaintiff's "Motion to File Late Notice of Claim" [Doc. No. 3] is DENIED.

/s/ Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

---

[10] To the extent plaintiff requests additional discovery, the request is denied. Plaintiff represented she only needed discovery related to the alleged "substantial prejudice" suffered by defendant. This issue is moot. Defense counsel conceded there was no "substantial prejudice" for the purpose of the present motion. OA Tr. 6:22-25; 25:12-18.