IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BROOKE HANSEN,<br><br>    Plaintiff,<br><br>v.<br><br>ATLANTIC COUNTY JUSTICE<br>FACILITY, et al.,<br><br>    Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 17-466 (JBS/JS)<br><br>**OPINION** |

APPEARANCES:

Anton Kaminsky, Esq.
David P. Heim, Esq.
BOCHETTO AND LENTZ, PC
1524 Locust Street
Philadelphia, PA 19102
    Attorneys for Plaintiff

James T. Dugan, Esq.
Atlantic County Department of Law
133 Atlantic Avenue
8th Floor
Atlantic City, NJ 08401
    Attorney for Defendant

**SIMANDLE, District Judge:**

**I.   INTRODUCTION**

    This dispute arises out of a head injury suffered by Plaintiff Brooke Hansen ("Plaintiff") while she was incarcerated at the Atlantic County Justice Facility. Approximately one year after she was injured, Plaintiff filed suit against Defendants Atlantic County Justice Facility, Atlantic County Department of Public Safety, Atlantic County of New Jersey, and their agents

(collectively, "Defendants"), bringing claims under the U.S. Constitution and New Jersey Civil Rights Act, as well as the New Jersey Tort Claims Act ("NJTCA"). [Docket Item 1.] Specifically, Plaintiff asserts the following causes of action: (1) substantive due process civil rights violation under 28 U.S.C. § 1983 and N.J.S.A. § 10:6-2; (2) negligence; (3) negligent supervision; and (4) dangerous conditions of public property pursuant to N.J.S.A. 59:4-2. [Docket Item 7.]

Before the Court is Defendants' motion to dismiss the Amended Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). [Docket Item 17.] The principal issue to be determined is whether Plaintiff has stated a claim for violation of her substantive due process rights upon which relief can be granted. As discussed below, the Court finds that Plaintiff has failed to allege a plausible claim that Defendants acted with deliberate indifference to a serious medical need and will, therefore, grant Defendants' motion to dismiss Count One without prejudice.

Also before the Court is the issue of whether Plaintiff's tort claims (Counts Two, Three, and Four) are barred by her failure to timely file a notice of claim under the NJTCA. For the reasons discussed <u>infra</u>, the Court fully endorses and incorporates the Memorandum Opinion and Order of the Honorable Joel Schneider, U.S.M.J., dated August 18, 2017, in which Judge Schneider determined that Plaintiff failed to timely file notice

of her NJTCA claims and that "extraordinary circumstances" did not warrant a late filing of notice. [Docket Item 24.] Because Plaintiff failed to satisfy a critical statutory element of the NJTCA, see N.J.S.A. 59:8-8(a), the Court will dismiss Counts Two, Three, and Four with prejudice.

## II. BACKGROUND[1]

On January 28, 2016, Plaintiff was arrested by an unnamed New Jersey State Police officer during a traffic stop on a drug-related warrant issued out of Atlantic County. (Am. Compl. at ¶¶ 17-22.) Plaintiff admitted she was under the influence of alcohol, heroin, and Xanax at the time of arrest and claims she was visibly intoxicated during the traffic stop. (Id. at ¶ 20.) Plaintiff asserts that these visible traits included severely slurred speech, drifting in and out of consciousness, dilated pupils, and an impaired ability to walk. (Id. at ¶ 21.) Upon

---

[1] Although, as a general rule, a party's reliance upon factual materials extraneous to the pleadings would require the Court to treat a motion to dismiss as one for summary judgment under Rule 56, see Crown Cent. Petroleum Corp. v. Waldman, 634 F.2d 127, 129 (3d Cir. 1980), the Court may consider a "document integral to or explicitly relied upon in the complaint," or an "undisputedly authentic document" without converting the motion. In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) and Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). In this case, the Amended Complaint [Docket Item 7] and Plaintiff's motion to file late notice of claim [Docket Item 3] explicitly rely upon certain prison and hospital records. As the parties do not dispute the authenticity of these records, the Court will consider Defendants' intake records [Docket Item 14 at Exhibits B-D] for purposes of this motion.

arrest, Plaintiff was taken into police custody and transported to the Atlantic County Justice Facility. (Id. at ¶ 22.)

Around 1:30 p.m., Plaintiff was received into an admissions holding cell at the Atlantic County Justice Facility. [Docket Item 14 at Exhibit B.] There, Plaintiff maintains, she remained visibly intoxicated. (Am. Compl. at ¶ 24.) Plaintiff avers that her obvious impairment put Defendants on notice she had a "high risk of losing consciousness and/or falling." (Id. at ¶ 29.)

At 3:48 p.m., Plaintiff lost consciousness and collapsed, hitting her head against the glass barrier of the holding cell and then on the concrete floor. (Id. at ¶¶ 2, 30.) Shortly thereafter, Plaintiff was immediately transported to Shore Medical Center, where she was seen by a doctor at 5:42 p.m. [Docket Item 7 at Exhibit A.] A computerized tomography ("CT") scan of Plaintiff's brain revealed "increased attenuation within apparent 2.3 1.3 cm mass within the medial aspect of the right temporal fossa adjacent to the sphenoid bone," which "may be related to meningioma." [Id.] Later that evening, Plaintiff was discharged from Shore Medical Center and transported back to Atlantic County Justice Facility. [Docket Item 14 at Exhibit B.] At around 10 p.m., a registered nurse performed a "Visual Triage," completed a "Registered Nurse Assessment," and approved Plaintiff for the general population. [Id.] The registered nurse assigned Plaintiff with a "special needs" status, which required "lower level, lower bunk" medical housing through February 12,

2016, due to concerns of withdrawal symptoms, including possible seizures. [Docket Item 14 at Exhibits C and D.]

On February 11, 2016, Plaintiff was transported back to Shore Medical Center for further testing, which revealed a "large flow void arising from the right internal carotid artery measuring 2 cm in greatest dimension, most consistent with giant aneurysm."[2] [Docket Item 7 at Exhibit B.] During the remainder of her incarceration, Plaintiff underwent detoxification for her heroin addition, suffered from depression and anxiety, and on, multiple occasions, reported to prison officials an intent to commit suicide. (Id. at ¶ 39, 42-43.) Plaintiff was released from the Atlantic County Justice Facility on April 30, 2016. (Id. at ¶ 38.)

Six months after her release, on November 2, 2016, Plaintiff visited Kennedy University Hospital, "complaining of severe pains in her head and abnormal swelling and blurry vision in her right eye." (Id. at ¶ 50.) A CT scan and MRI revealed that Plaintiff's brain aneurysm had increased in size and required emergency surgery. (Id. at ¶¶ 51-52.) On December 14, 2016, Plaintiff successfully had her aneurysm removed. (Id. at ¶ 58.)

On or about November 2, 2016, Plaintiff retained present counsel who served Defendants with a notice of claim on November

---

[2] Defendants do not dispute that Plaintiff's aneurysm was caused by her fall on January 28, 2016. (Def. Br. at 4-5.)

10, 2016. [Docket Item 7 at Exhibit D.] On January 23, 2017, Plaintiff filed her first Complaint against Defendants. [Docket Item 1.] Four days later, Plaintiff filed the Amended Complaint. [Docket Item 7.] In the four-count Amended Complaint, Plaintiff alleges that, in addition to the brain aneurysm she had removed, the January 28, 2016 fall caused her emotional and physical harm, including regular severe headaches; short and long term memory loss and an ability to maintain focus on tasks; loss of cognitive function; severe irritability and anger due to the headaches and inability to focus; restlessness and insomnia; loss of inhibition and passion for her profession due to her other symptoms; nausea, loss of appetite, and hair loss due to radiation treatment; blurred vision; depression; anxiety; and suicidal thoughts. (Am. Compl. at ¶ 63.) Defendants filed the motion to dismiss the Amended Complaint now pending before the Court. [Docket Item 17.]

Shortly after filing her first Complaint, Plaintiff filed a motion asking the Court to find that her notice of claim served on November 10, 2016 was timely or, in the alternative, that she be permitted to file late notice due to "extraordinary circumstances." [Docket Item 3.] Judge Schneider heard oral argument on the motion and, on August 18, 2017, issued a 28-page Memorandum Opinion and Order denying Plaintiff's motion. [Docket Item 24.]

**III. Standard of Review**

1. **Rule 12(b)(1)**

A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) which is filed prior to answering the complaint is considered a "facial challenge" to the court's subject matter jurisdiction. Cardio-Med. Assocs. v. Crozer-Chester Med. Ctr., 721 F.2d 68, 75 (3d Cir. 1983). This is distinct from a factual attack on the court's subject matter jurisdiction which can only occur after the answer has been served. Mortensen v. First Federal Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). In deciding a Rule 12(b)(1) motion to dismiss which is filed prior to an answer, the court must "review only whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court." Licata v. U.S. Postal Serv., 33 F.3d 259, 260 (3d Cir. 1994). When a defendant files a motion under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction for the sake of remaining in federal court. Gould Elec., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).

2. **Rule 12(b)(6)**

Pursuant to Fed. R. Civ. P. 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not required, and "the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it

rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted). While a complaint is not required to contain detailed factual allegations, the plaintiff must provide the "grounds" of his "entitle[ment] to relief", which requires more than mere labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that the plaintiff failed to set forth fair notice of what the claim is and the grounds upon which it rests. Id. A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 678.

**IV. DISCUSSION**

    **1. Substantive Due Process Claim (Count One)**

Plaintiff brings Count One pursuant to 42 U.S.C. § 1983, alleging, in relevant part, that her "substantive due process right to safe conditions of confinement and appropriate medical care" was violated while in Defendants' custody. (Am. Compl. at

¶ 71.) Specifically, Plaintiff avers that "[b]y allowing [Plaintiff] to be placed, without restraint, in a holding cell that did not take into account her level of intoxication or that she was under the influence of strong narcotics such as Xanax and heroin, Defendants exhibited a deliberate indifference as to [her] rights and departed substantially from the accepted standards of care for a correctional facility's and police officer's handling of such an intoxicated individual." (Id. at ¶ 65.) Defendants argue that Plaintiff fails to state a claim for violation of her due process rights because, "[a]t best, [she] is alleging that Atlantic County was negligent in processing plaintiff into its facility." (Def. Br. at 9.)

The Due Process Clause of the Fourteenth Amendment applies to pretrial detainees' claims of inadequate medical care. Bocchino v. City of Atlantic City, 179 F. Supp.3d 387, 403 (D.N.J. 2016). "[T]he Fourteenth Amendment in this context incorporates the protections of the Eighth Amendment", Holder v. Merline, 2005 WL 1522130, at *3 (D.N.J. June 27, 2005) (citing Simmons v. City of Philadelphia, 947 F.2d 1042, 1067 (3d Cir. 1991), cert. denied, 503 U.S. 985 (1992)), and most cases have stated that, at a minimum, the Eighth Amendment's "deliberate indifference" standard will suffice. In other words, substantive due process rights are violated only when the behavior of the government official is so egregious and outrageous that it "shocks the conscience." A.M. ex rel. J.M.K. v. Luzerne Cnty.

9

Juvenile Detention Ctr., 372 F.3d 572, 579 (3d Cir. 2004) (citing Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846-47 (1998)).

Applying this principle in the context of a claim for violation of the right to adequate medical care, a pretrial detainee must allege the following two elements to set forth a cognizable cause of action: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, an inmate must demonstrate that his medical needs are serious. The Third Circuit has defined a "serious medical need" as: (1) "one that has been diagnosed by a physician as requiring treatment"; (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention"; or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003) (internal quotations and citations omitted). When evaluating this first element under Estelle, courts consider factors such as "the severity of the medical problems, the potential for harm if the medical care is denied or delayed and whether any such

harm actually resulted from the lack of medical attention." Maldonado v. Terhune, 28 F. Supp.2d 284, 289 (D.N.J. 1998).

The second element of the Estelle test is subjective and "requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need." Holder, 2005 WL 1522130, at *4 (citing Natale, 318 F.3d at 582). Conduct that constitutes negligence (that is, a failure to exercise reasonable care under the circumstances) does not rise to the level of deliberate indifference; rather, deliberate indifference requires at least a "reckless disregard of a known risk of harm." Holder, 2005 WL 1522130, at *4 (citing Farmer v. Brennan, 511 U.S. 825, 836 (1994)).

At this stage, the Court accepts as true that Plaintiff's visibly high-level of intoxication and inebriation was of such a nature and extent as to satisfy the "serious medical need" prong of a Fourteenth Amendment claim. However, the Amended Complaint does not set forth sufficient facts to satisfy the second prong requiring a showing of "deliberate indifference," as now discussed.

Plaintiff argues that Defendants exhibited deliberate indifference "[b]y allowing [her] to be placed, without restraint, in a holding cell that did not take into account her level of intoxication or that she was under the influence of strong narcotics such as Xanax and heroin." (Am. Compl. at ¶¶ 65, 68-70.) While Defendants concede they had actual knowledge

of Plaintiff's intoxicated and inebriated state at the time she was processed (Def. Br. at 3-4), the Amended Complaint sets forth insufficient facts to infer how, if at all, Defendants <u>recklessly</u> disregarded Plaintiff's health or safety by temporarily housing her in a holding cell specifically designed for admissions. <u>Cf.</u> <u>Nicini v. Morra</u>, 212 F.3d 798, 815 (3d Cir. 2000) (finding deliberate indifference where prison officials ignored objective evidence that a plaintiff had serious need for medical care); <u>Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987) (finding deliberate indifference "where necessary medical treatment is delayed for non-medical reasons"). Notably, Plaintiff fails to identify <u>who</u> acted recklessly and <u>what</u>, if any, objective evidence Defendants ignored in the two hours between intake and her fall. Thus, Plaintiff has not adequately alleged that Defendants acted with deliberate indifference <u>pre</u>-fall when they placing her in the admissions holding cell while intoxicated and inebriated.

After the fall, Plaintiff claims that, "[i]n complete disregard for [her] health and safety, the employees, staff and/or correctional officers at the Correctional Facility did not take [Plaintiff] to a hospital and failed to obtain any medical evaluation of [her] condition." (Am. Compl. at ¶ 28.) Plaintiff's claim is belied by her own exhibits, which show that Defendants twice transported Plaintiff to Shore Medical Center for treatment – on January 28, 2016 (the date of the fall,

within minutes of its occurance) and on February 11, 2016 (for a follow-up appointment). [See Docket Item 7 at Exhibits A and B.] Defendants' exhibits on which Plaintiff relies also show that Plaintiff underwent a medical evaluation by a registered nurse on January 28, 2016. [See Docket Item 14 at Exhibits B-D.][3] Thus, Plaintiff's claims about Defendants' post-fall conduct appear to be unfounded.

For these reasons, Plaintiff has failed to demonstrate that Defendants acted with "deliberate indifference" and the Court will dismiss Count One without prejudice. Plaintiff may be able to cure the Amended Complaint by identifying the actions taken by specific state actors which supposedly amounted to reckless conduct. To that end, the Court shall grant Plaintiff leave to file a motion to amend the Complaint consistent with this Opinion within 30 days of the entry of the Order.

**2. New Jersey Tort Claims Act Claims (Counts Two, Three, and Four)**

In Counts Two, Three, and Four Plaintiff brings state law tort actions against Defendants for negligence, negligent

---

[3] In her Opposition Brief, Plaintiff also argues that Defendants acted with deliberate indifference by failing to abide by their own policy requiring a registered nurse to complete certain portions of Plaintiff's Health Evaluation within two hours of custody notification. (Pl. at 3-4.) While there does appear to be an approximately eight-hour gap between custody notification (at 1:30 p.m.) and the completion of the "RN Visual Triage" and "Registered Nurse Assessment" (around 9:30 p.m.), [Docket Item 14 at Exhibit B], that gap is easily explained by Plaintiff's emergency-room visit to Shore Medical Center. [Docket Item 7 at A.]

supervision, and dangerous conditions of public property. [Docket Item 7.] Defendants argue these tort claims should be dismissed because Plaintiff failed to timely file a notice of claim, as required by New Jersey law.

Tort claims against public entities and public employees are governed by the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq. See Velez v. City of Jersey City, 180 N.J. 284, 850 A.2d 1238 (2004); Longo v. Santoro, 195 N.J. Super. 507, 514, 480 A.2d 934 (App. Div. 1984). The NJTCA requires that a notice of claim must be filed with the public entity not later than the ninetieth (90th) day after accrual of the underlying cause of action. N.J.S.A § 59:8-8(a). Failure to file the required notice will generally result in the dismissal of the Plaintiff's tort claims. N.J.S.A. § 59:8-3 ("No action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter.").

The NJTCA establishes an exception to the ninety-day notice requirement if, upon motion supported by affidavits, the claimant seeking to file a late claim shows: (1) reasons constituting "extraordinary circumstances" for the claimant's failure to meet the ninety-day filing requirement; and (2) that the defendant(s) are not "substantially prejudiced thereby." N.J.S.A. 59:8-9. The existence of "extraordinary circumstances" is to be determined by the courts on a case-by-case basis. D.D.

v. Univ. of Med. and Dentistry of New Jersey, 213 N.J. 130, 148 (N.J. 2013) (citing Lowe v. Zarghami, 158 N.J. 606, 626 (N.J. 1999)).

By the unambiguous terms of the NJTCA, Plaintiff is barred from bringing a tort action against Defendants. As Plaintiff's tort claims are against public entities and public employees, Plaintiff was required to file a notice of claim with Atlantic County within ninety days of the accrual of her claim. Following full briefing and oral argument on Plaintiff's motion to file late notice of claim [Docket Item 3], Judge Schneider found that Plaintiff's November 10, 2016 notice of claim was not timely filed pursuant to N.J.S.A. 59:8-8 because her tort claims accrued on January 28, 2016, the date of the fall, rather than on November 2, 2016, when Plaintiff visited Kennedy University Hospital and supposedly "discover[ed] the full extent of her injuries and the causal connection between her symptoms and the January 28 fall." [Docket Item 24 at 6, 14-16.] Judge Schneider also determined that Plaintiff's physical and emotional conditions, ninety-three-day incarceration, and inability to retain counsel, when considered individually or in totality, did not constitute "extraordinary circumstances" to excuse the late notice under N.J.S.A. 59:8-9. [Id. at 16-28.] In summary, Judge Schneider found that Plaintiff failed to satisfy a critical statutory requirement of the NJTCA. This Court sees no reason to disturb Judge Schneider's well-reasoned decision and will

dismiss Counts Two, Three, and Four against Defendants with prejudice.

**V.     CONCLUSION**

For the foregoing reasons, Count One will be dismissed without prejudice and Plaintiff will be granted leave to file a motion to amend the Amended Complaint within thirty (30) days. Additionally, Counts Two, Three, and Four will be dismissed with prejudice. An accompanying Order shall be entered.

| | |
|---|---|
| **November 30, 2017** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | U.S. District Judge |

```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
```

BROOKE HANSEN,

       Plaintiff,

   v.

ATLANTIC COUNTY OF NEW JERSEY, et al.,

       Defendant.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 17-466 (JBS/JS)

**ORDER**

This matter having come before the Court on Defendants' motion to dismiss Plaintiff's Amended Complaint [Docket Item 17]; the Court having considered the parties' submissions; for the reasons explained in the Opinion of today's date; and for good cause shown;

IT IS this __**30th**__ day of __**November**__, **2017,** hereby

ORDERED that Defendants' motion is **GRANTED** and that Count One of the Amended Complaint is hereby dismissed without prejudice and Counts Two, Three, and Four are dismissed with prejudice; and it is further

ORDERED that Plaintiff shall be granted leave to file a motion to amend the Amended Complaint within thirty (30) days of the entry of this Order; and it is further

ORDERED that the Clerk shall CLOSE this case upon the docket.

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
U.S. District Judge